del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A; *Arriaga v. F.S.E.,* 145 D.P.R. 122, 131 (1998).

# 2002 DTA 125

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL VII DE CAROLINA Y FAJARDO

FAUSTINO GARCIA ABISLAIMAN H/N/C BG MECHANICAL
Demandante-Apelado

v.

TOMAS DUEÑO
Demandado-Apelante

Núm. KLAN-01-00692

San Juan, Puerto Rico, a 13 de agosto de 2002

Panel integrado por su Presidente, el Juez Miranda de Hostos,
la Juez Hernández Torres y el Juez Martínez Torres

*Per Curiam*

## TEXTO COMPLETO DE LA SENTENCIA
## (EN RECONSIDERACION)

La parte demandante-apelada, Faustino García Abislaimán, nos solicita la reconsideración de la Sentencia que emitimos el 30 de abril de 2002. Nos señala que surge de la transcripción estipulada que sí hay base para

indemnizarle en más de $5,000 por la pérdida de equipo y materiales que le ocasionó la parte demandada-apelante, Tomás Dueño. Luego de estudiar de nuevo la transcripción, así como la argumentación de ambas partes, concluimos que si bien la compensación de $24,165.15 que ordenó el Tribunal de Primera Instancia, Sala Superior de Carolina, es exagerada, se probaron daños por más de los $5,000 que estimamos en nuestra Sentencia en apelación. Por esa razón, procedemos a reconsiderar.

Luego de estudiados los hechos y el derecho aplicable y los alegatos de las partes, se modifica la sentencia del Tribunal de Primera Instancia, a los efectos de reducir a $13,969.00 la cuantía concedida a la parte demandante-apelada, Faustino García Abislaimán, por concepto de los daños sufridos.

## I

A partir del 16 de enero de 1997 hasta el día 11 de octubre de 1999, de forma ininterrumpida, la parte demandante-apelada, Faustino García Abislaimán, ocupó mediante contrato verbal de arrendamiento con la parte demandada-apelante, Tomás Dueño, una nave comercial de unos dieciséis (16) pies de largo por cuarenta (40) pies de ancho, que utilizaba como almacén de materiales y equipos de su negocio. La parte demandante-apelada, García Abislaimán, se dedica al negocio de instalación, reparación y mantenimiento de equipos de refrigeración y aires acondicionados comerciales. La renta acordada entre las partes era de ciento cincuenta dólares ($150.00) mensuales, pagadera en o antes de los días quince (15) de cada mes (T.E.P., pág. 54).

El 27 de septiembre de 1999, García Abislaimán, parte demandante-apelada, llegó a la propiedad que le había arrendado la parte demandada-apelante, Dueño, y encontró que el almacén había recibido un impacto fuerte, lo que le había causado daños a una esquina, y los portones de la propiedad estaban rotos. El accidente fue ocasionado por la parte demandada-apelante, Dueño, quien al dar reversa con su guagua Ford 350, impactó una de las columnas del local que le había arrendado a la parte demandante-apelada, García Abislaimán. Al encontrarse con esta situación, la parte demandante-apelada, García Abislaimán, procedió a informarle lo sucedido a la parte demandada-apelante, Dueño, quien se comprometió a reparar los daños que le había causado a la misma. Aunque la parte demandada-apelante, Dueño, tenía conocimiento de que el local arrendado estaba averiado a consecuencia del accidente causado por él, en ningún momento arregló el local.

El 11 de octubre de 1999, la parte demandante-apelada, García Abislaimán, se personó al lugar donde se encontraba el almacén que le había arrendado la parte demandada-apelada, Dueño, y encontró que todos los materiales que tenía dentro de dicho almacén estaban tirados y regados. A consecuencia de dicha situación, la parte demandada-apelante, Dueño, procedió a reubicar los equipos en un local contiguo de su pertenencia, sin antes consultar a la parte demandante-apelada, García Abislaimán. Luis Alberto Jordán, empleado de Dueño, le ayudó a remover los equipos y materiales de García Abislaimán al local contiguo. El local en el que Dueño reubicó las pertenencias de la parte demandante-apelada, García Abislaimán, era de cemento y estaba cerrado con portones, cadenas y dos candados, por lo que dicha parte alega que no tenía acceso a sus pertenencias. Las cadenas y candados que se encontraban en el nuevo local eran las del local anterior, ya que lo que hizo la parte demandada-apelante, Dueño, fue cortar las cadenas y soldarlas a los portones del nuevo local. Sin embargo, la parte demandante-apelada, García Abislaimán, en ningún momento hizo gestiones afirmativas encaminadas a recuperar su equipo y materiales.

El 25 de octubre de 1999, la parte demandante-apelada, Faustino García Abislaimán h/n/c BG Mechanical, presentó ante el Tribunal de Primera Instancia, Sala Superior de Carolina, una demanda en daños y perjuicios contra la parte demandada-apelante, Tomás Dueño. En la demanda, García Abislaimán alegó que se ha visto privado de utilizar sus equipos y materiales, ya que la parte demandada-apelante, Dueño, los ha mantenido bajo su exclusivo control, y que parte del equipo y materiales se ha dañado. También alegó que sufrió retrasos en sus trabajos al verse privado de los materiales y equipos que tenía disponible en su almacén, por lo que se vio obligado a hacer gestiones para adquirirlos nuevamente. Alegó que ello causó demoras en la entrega de sus proyectos. Además, García Abislaimán alegó daños, sufrimientos y angustias mentales por las actuaciones

negligentes de la parte demandada-apelante, Dueño, estimadas en cien mil dólares ($100,000.00).

El 12 de enero de 2000, la parte demandada-apelante, Dueño, presentó su contestación a la demanda. Señaló que la demanda deja de exponer una reclamación que justifique la concesión de un remedio, que los daños reclamados son excesivos, así como que el demandante-apelado, García Abislaimán, no mitigó los daños. Junto con la contestación a la demanda, la parte demandada-apelante, Dueño, presentó una reconvención contra la parte demandante-apelada, García Abislaimán, por alegados cánones de arrendamiento no pagados, ascendentes a la suma de mil cincuenta dólares ($1,050.00).

Luego de los trámites procesales de rigor, el Tribunal de Primera Instancia celebró el juicio en su fondo el 8 y 9 de febrero de 2001. La prueba documental presentada por la parte demandante-apelada, García Abislaimán, consistió de: ocho (8) cheques de pago de la renta de enero a agosto de 1999; tres (3) facturas de York International Corporation; ■ tres (3) facturas de Merino de Ponce; ■ ocho (8) facturas de Refricentro, ■ y cinco (5) fotografías del lugar y parte de los equipos que se encontraban en el mismo. La prueba testifical de la parte demandante-apelada, García Abislaimán, consistió de su propio testimonio así como el de Delilah Torres (supervisora de crédito y cobro de la compañía York International Corporation), Rafael Merino Viñas (dueño del negocio Merino de Ponce) y Sixto Hernández (Gerente de Reficentro). La prueba documental y testifical de la parte demandada-apelante, Dueño, consistió de una foto del local nuevo y del testimonio de Luis Alberto Jordán (empleado de Tomás Dueño), Mercedes Lugo Rodríguez (esposa de Tomás Dueño), y del suyo propio.

El 27 de abril de 2001, el Tribunal de Primera Instancia dictó sentencia, cuya notificación se archivó en autos el 11 de mayo de 2001. En la referida sentencia, el foro de primera instancia declaró con lugar la demanda en daños y perjuicios y dictó sentencia condenando a la parte demandada-apelante, Dueño, a pagar la suma de veinticuatro mil ciento sesenta y tres dólares con quince centavos ($24,163.15) por los daños físicos y mentales que le causó a la parte demandante-apelada, García Abislaimán, al destruir y entrar sin autorización en la propiedad arrendada.

Posteriormente, el 18 de mayo de 2001, la parte demandada-apelante, Dueño, presentó ante el Tribunal de Primera Instancia una moción solicitando determinaciones de hechos adicionales y solicitud de reconsideración de la sentencia. El 29 de mayo de 2001, la parte demandante-apelada, García Abislaimán, radicó una moción en cumplimiento de orden mediante la cual se opuso a la solicitud de determinaciones de hechos adicionales y reconsideración presentada por la parte demandada-apelante, Dueño. El 12 de junio de 2001, el Tribunal de Primera Instancia declaró sin lugar la moción solicitando determinaciones de hechos adicionales y reconsideración, mediante resolución que se notificó el 14 de junio de 2001.

Inconforme con la sentencia dictada por el Tribunal de Primera Instancia, el demandado-apelante, Dueño, apeló el 17 de julio de 2001 ante este Tribunal de Circuito de Apelaciones. Dueño nos plantea que erró el Tribunal de Primera Instancia al dictar sentencia, ya que a su juicio, ésta no guarda proporción con la prueba desfilada sobre la naturaleza de los daños. Además, arguye que la naturaleza de los daños se puede reintegrar en forma específica. La parte demandante-apelante, García Abislaimán, presentó el 16 de abril de 2002 su escrito en oposición al recurso de apelación. Luego de que las partes presentaran la transcripción estipulada del juicio en su fondo y con el beneficio de los alegatos de ambas partes, modificamos la sentencia para reducir la indemnización a $5,000.00. La parte demandante-apelada, García Abislaimán, solicitó que reconsideremos nuestro dictamen, ya que entiende que la prueba incontrovertida justifica una indemnización mayor de $5,000. Ordenamos a la parte demandada-apelante, Dueño, replicar a la moción de reconsideración, lo que esa parte hizo. Así pues, resolvemos.

## II

### A. Daños y Perjuicios

En este caso no se alegan ni se probaron daños producto de un incumplimiento de contrato. Se trata de un

pleito por los daños causados a la propiedad del arrendatario y demandante-apelado, García Abislaimán, y los sufrimientos que le causó. Procede, entonces, discutir los elementos de la causa por daños y perjuicios extracontractuales.

*"El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado".* Artículo 1802, 31 L.P.R.A § 5141. *"Daño es todo aquel menoscabo material o moral que sufre una persona, ya en sus bienes vitales naturales, ya en su propiedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra". García Pagán v. Shiley Caribbean, Etc.,* 122 D.P.R. 193, 205-206 (1988).

La culpa consiste en la omisión de la diligencia exigible, la que si se hubiera empleado, podría haber evitado el resultado dañoso. *Toro Aponte v. E.L.A.,* 142 D.P.R. 464, 473 (1997). El Artículo 1802 del Código Civil, *supra,* enuncia la norma genérica que prohíbe causar daño a otro mediante conducta activa o pasiva. *Soc. Gananciales v. González Padín Co., Inc.,* 117 D.P.R. 94, 105 (1986).

Para que exista responsabilidad civil a tenor con el Artículo 1802 del Código Civil, *supra,* es necesario que concurran los siguientes elementos: (1) un daño, (2) una acción u omisión negligente, y (3) la correspondiente relación causal entre el daño y la conducta culposa o negligente. *Toro Aponte v. E.L.A., supra,* a la pág. 472; *Ramírez v. E.L.A.,* 140 D.P.R. 385, 391 (1996); *Monllor v. Soc. de Gananciales,* 138 D.P.R. 600, 604 (1995).

Por otra parte, los elementos que han de considerarse en la determinación de si una omisión genera responsabilidad son: (1) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño, el incumplimiento del cual constituye la antijuricidad, y (2) si de haberse realizado el acto omitido, se hubiera evitado el daño. *Tormos Arroyo v. D.I.P.,* 140 D.P.R. 265, 271 (1996); *Soc. Gananciales v. G. Padín Co., Inc.,* 117 D.P.R. 94, 106 (1986). Es precisamente del inciso número dos que surge el deber de previsibilidad que da lugar a la responsabilidad bajo el Artículo 1802 del Código Civil, *supra.* Sin embargo, esto no quiere decir que la persona está obligada a prever todos los posibles riegos que puedan concebirse en una determinada situación. Si así fuera, se convertiría prácticamente en una responsabilidad absoluta. *Pacheco v. A.F.F.,* 112 DPR 296, 300 (1982).

*"El deber de previsión no se extiende a todo peligro imaginable que concebiblemente pueda amenazar la seguridad ... sino a aquel que es probable que suceda y que llevaría a una persona prudente a anticiparlo." Blas v. Hosp. Guadalupe,* 146 D.P.R. 267, 324 (1998); *Hernández v. Gobierno de la Capital,* 81 D.P.R. 1031, 1038 (1960).

*"Cabe señalar que [e]l deber de cuidado incluye tanto la obligación de anticipar como la de evitar la ocurrencia de daños cuya probabilidad es razonablemente previsible".* De otro lado, *"[l]a culpa consiste en la omisión de la diligencia exigible, mediante cuyo empleo podría haberse evitado el resultado dañoso. La diligencia exigible es la que cabe esperar del ser humano medio, el buen paterfamilias. Si el daño es previsible por éste, hay responsabilidad. Si no es previsible, estamos generalmente en presencia de un caso fortuito."*

*Tormos Arroyo v. D.I.P., supra,* a la pág. 274. (Citas Omitidas).

En nuestro ordenamiento jurídico, rige además la teoría de la causalidad adecuada. Conforme a ella *"no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". Sociedad de Gananciales v. Jerónimo Corp.,* 103 D.P.R. 127, 134 (1974). Esta norma ha sido fundamentalmente desarrollada con el propósito de limitar la responsabilidad civil a aquellos casos en que la ocurrencia de un hecho dañoso es imputable moralmente a su alegado autor, porque el daño es una consecuencia previsible o voluntaria del acto negligente. *Soto Cabral v. E.L.A.,* 138 D.P.R. 298, 317 (1995). Así pues *"un daño parece ser el resultado natural y probable de un acto negligente si después del suceso, y mirando*

*retroactivamente el acto que se alega. ser negligente, tal daño aparece como la consecuencia razonable y ordinaria del acto".* Toro v. E.L.A., 142 D.P.R. 464, 474 (1997), citando *Torres Trumbull v. Pesquera,* 97 D.P.R. 338, 343-344 (1969). No hay duda de que en este caso se probaron todos esos elementos.

## B. Criterios para revisar la apreciación de la prueba

En cuanto a la apreciación de la prueba desfilada ante el Tribunal de Primera Instancia, el alcance de la revisión judicial sobre cuestiones de hecho está regulado por lo dispuesto en la Regla 43.2 de las Reglas de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 43.2, la cual en lo pertinente dispone:

*"Regla 43.2. Declaración de derechos probados y conclusiones de derechos*

*En todo pleito, el tribunal especificará los hechos probados y separadamente consignará sus conclusiones de derecho y ordenará que se registre la sentencia que corresponda; y al conceder o denegar injunctions interlocutorios, el tribunal, de igual modo, consignará las determinaciones de hechos y conclusiones de derechos que constituyan los fundamentos de su resolución. Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de los testigos. Las determinaciones de hechos de un comisionado, en tanto en cuanto el tribunal las adopte, serán consideradas como determinaciones de hechos del tribunal."* [Enfasis Suplido.].

Respecto a la revisabilidad de la prueba testifical, es norma establecida aquélla que nos impide intervenir con la apreciación de la prueba que hizo el Tribunal de Primera Instancia, en ausencia de pasión, prejuicio, parcialidad o error manifiesto. *Colón González v. KMART,* Opinión de 26 de junio de 2001, **2001 J.T.S. 98,** a la pág. 1484; *Trinidad García v. Chade,* Opinión de 18 de enero de 2001, **2001 J.T.S. 10,** a la pág. 794.

En reiteradas ocasiones, el Tribunal Supremo ha reconocido como norma fundamental de nuestro ordenamiento jurídico que los tribunales apelativos, en ausencia de error, pasión, prejuicio y parcialidad, no deben intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad realizadas por el Tribunal de Primera de Instancia. *Argüello López v. Argüello García,* Opinión de 31 de agosto de 2001, **2001 J.T.S. 127,** pág. 94; *López Vicil v. ITT Intermedia Inc.,* 142 D.P.R. 857, 864 (1997). También ha enfatizado que *"un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia."* Argüello *López v. Argüello García, supra; Rolón García y otros v. Charlie Car Rental,* Opinión de 2 de junio de 1999, **99 JTS 89,** pág. 1099.

Las determinaciones sobre la credibilidad que le dio a los testigos el tribunal sentenciador *"es merecedora de gran deferencia por parte del tribunal apelativo, por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos."* Argüello López v. Argüello García, supra; Pueblo v. Bonilla Romero, 120 D.P.R.92, 111 (1987).

Sin embargo, aunque el arbitrio del juzgador de hechos es respetable y merece deferencia, no es absoluto y *"una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de este Tribunal."* Méndez v. Morales 142 D.P.R. 26, 36 (1996); *Rivera Pérez v. Cruz Corchado,* 119 D.P.R. 8, 14 (1987). Por ello, aunque haya evidencia que sostenga las conclusiones de hechos del Tribunal de Primera Instancia, si de un análisis de la totalidad de la evidencia, quedamos convencidos de que se cometió un error, como cuando las conclusiones están en conflicto con el balance más racional, justiciero y jurídico de la totalidad de la evidencia recibida, las consideraremos claramente erróneas. *Méndez v. Morales, supra; Abudo Servera v. A. T.P.R.,* 105 D.P.R. 728, 731 (1977).

## C. La estimación y evaluación de los daños

La parte demandada-apelante, Dueño, plantea, en síntesis, que erró el Tribunal de Primera Instancia al apreciar la prueba y al evaluar y estimar los daños sufridos por la parte demandante-apelada, Faustino García Abislaimán; así como ordenar el reemplazo específico de los materiales y equipos. Eso no es del todo correcto, ya que todas las determinaciones de hechos probados están avaladas por la prueba. El problema surge en la valoración de los daños, como conclusión de derecho que emana de los hechos probados.

En nuestra jurisdicción, la norma reparadora del Artículo 1802, *supra*, es amplia y abarcadora. En principio, algunos daños son de naturaleza intangibles, como lo es el sufrimiento, las angustias mentales y los daños emocionales, por lo que se consideran daños no patrimoniales, debido a que su valoración pecuniaria no se funda en una equivalencia matemática. Aún así, no por eso dejan de ser compensables en dinero. *Santini Rivera v. Serv Air, Inc.,* 137 D.P.R. 1, 7 (1994). Por consiguiente, al medir los daños en un caso, el juzgador debe hacerlo sobre una estricta base de correspondencia con la prueba, siempre procurando que la indemnización de los daños y perjuicios no se convierta en una industria y no resulte lesiva a nuestra economía. *S.L.G. v. F. W. Woolworth and Co.,* 143 D.P.R. 76, 81 (1997); *Atiles Moreu, Admor v. McClurg,* 87 D.P.R. 865, 877 (1963). Este deber de los jueces tiene el propósito del sentido remediador y no punitivo que encarna el Artículo 1802 del Código Civil, *supra. S.L.G. v. F. W. Woolworth and Co., supra.*

*"La responsabilidad civil por daños y perjuicios es precisamente el deber de resarcir al damnificado, otorgándole un valor económico al daño sufrido. El resarcimiento o indemnización pecuniaria consiste en atribuir al damnificado la cantidad de dinero suficiente para compensar su interés perjudicado. Es como una subrogación real en que el dinero ocupará el lugar de los daños y perjuicios sufridos, y una aplicación pecuniaria que crea una situación patrimonial que equivale a la destruida por el daño causado." Id*. Véase además: *García Pagán v. Shiley Caribbean, Ect., supra; Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443, 455-456 (1985).

El derecho que deberá ser compensado por daños no puede derrotarse meramente por el carácter especulativo que en alguna medida supone el cómputo de daños. *S.L.G. v. F. W. Woolworth and Co.,* 143 D.P.R. 76, 81 (1997); *Odriozola v. S. Cosmetic Dist. Corp.,* 116 D.P.R. 485, 510 (1985). Por esto se ha establecido que los tribunales apelativos no deben intervenir con la estimación de los daños que realicen los tribunales de instancia, a menos que las cuantías concedidas sean ridículamente bajas o exageradamente altas. *Blás v. Hosp. Guadalupe,* 146 D.P.R. 267, 339 (1998); *S.L.G. v. F. W. Woolworth and Co., supra,* a la pág. 83; *Quiñones López v. Manzano Pozas,* 141 D.P.R. 139, 178 (1996); *Cotto Morales v. Ríos,* 140 D.P.R. 604, 626 (1996); *Rosado v. Supermercado Mr. Special,* 139 D.P.R. 946, 954 (1996). Por ello, la parte que solicita la reducción de la indemnización concedida está obligada a demostrar la existencia de las circunstancias que hace meritorio que se modifique. *Blas v. Hosp. Guadalupe, supra; S.L.G. v. F. W. Woolworth and Co., supra; Quiñones López v. Manzano Pozas,* 141 D.P.R. 139, 179 (1996).

*"[L]a gestión judicial de estimar y valorar los daños en casos como el de autos, es difícil y angustiosa, debido a que no existe un sistema de certera computación que permita llegar a un resultado exacto en relación con el cual todas las partes queden satisfechas y complacidas". Nieves Cruz v. U.P.R.,* Opinión de 31 de mayo de 2000, **2000 J.T.S. 91**, a la pág. 1211. Véase también, *Blas v. Hosp. Guadalupe,* 146 D.P.R. 267, 339 (1998).

## D. La apreciación de la prueba y la adjudicación de los daños en este caso

Por la naturaleza de los daños probados, el remedio no puede ser la restauración de los materiales al sitio original, como pretende el demandado-apelante, Dueño. Su conducta al incautarse sin autorización de los bienes del arrendatario García Abislaimán, demandante-apelado, conlleva la obligación jurídica de indemnizar al perjudicado.

Ahora bien, del testimonio vertido en el foro de primera instancia por la parte demandante-apelada, García Abislaimán, se desprende que éste no poseía un inventario sobre los materiales y equipo que tenía guardado en el almacén que le había arrendado Tomás Dueño, parte demandada-apelante. (T.E.P., pág. 113.) Esto no permite y mucho menos pone al tribunal en condición de establecer certeramente qué equipo y cuáles materiales se extraviaron, si algunos, y cuál es el costo de su reemplazo.

Tampoco la parte demandante-apelada, García Abislaimán, pudo demostrar que tuviera facturas de los materiales y equipos que tenía guardados en el almacén, de manera que pudiera poner al tribunal en condiciones de probar su existencia y cuantificar los daños que su no disponibilidad le causó. (T.E.P., pág. 75-100.)

El Tribunal de Primera Instancia determinó que la parte demandada-apelante, Tomás Dueño, le causó daños a la parte demandante-apelada, Faustino García Abislaimán, ascendentes a veinticuatro mil ciento sesenta y tres dólares con quince centavos ($24,163.15). Sin embargo, del análisis de la prueba documental, así como de la transcripción del juicio en su fondo, hay que concluir -aún luego de darle la mayor deferencia a la apreciación de la prueba que hizo el Tribunal de Primera Instancia- y partiendo de las mismas determinaciones de hechos probados- que dicha partida de daños es excesiva y que no guarda correspondencia con la prueba presentada. De la prueba desfilada no hay duda de los daños sufridos por la parte demandante-apelada, García Abislaimán, al ver destruido el lugar donde guardaba sus materiales y herramientas de trabajo y del traslado de los mismos a otro lugar sin su consentimiento. Por consiguiente, la suma concedida al demandante-apelado García Abislaimán, en concepto de daños y sufrimientos, es excesiva y se aleja del balance más justiciero de la prueba.

Este Tribunal examinó de nuevo la transcripción a la luz de lo señalado por la parte demandante-apelada, Faustino García Abislaimán, h/n/c BG Mechanical. Surge que García Abislaimán presentó prueba no refutada que establece un total de $13,969, como el costo de equipo y materiales reemplazados. Ésta se desglosa en: $8,600 identificados por la testigo Delilah Torres, Supervisora de Crédito y Cobro de York International Corporation; $3,559 identificados por el testigo Rafael Merino Viñas, de la Ferretería Merino; y $1,810 identificados por el testigo Sixto Hernández, de Refricentro. La parte demandada-apelante, Tomás Dueño, no refutó dichas partidas. Además, dichas partidas fueron relacionadas a las pérdidas de García Abislaimán. Consisten en reemplazos del equipo y materiales extraviados debido a las actuaciones del Sr. Dueño.

## III

Así pues, en reconsideración, se modifica la sentencia del Tribunal de Primera Instancia y nuestra Sentencia en apelación, para fijar en $13,969.00 la indemnización debida a la parte demandante-apelada, Faustino García Abislaimán. Así modificada, se confirma la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Carolina.

Lo acordó y ordena el Tribunal, y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 2002 DTA 125**

**1.** Factura #125127 de 10 de agosto de 1999 por el importe de $4,7000; Factura #193806 de 22 de diciembre de 1999 por el importe de $3,900; Factura #126283 de 15 de marzo de 2000 por el importe de $3,900.

**2.** Facturas de 13 de diciembre de 1999, 18 de diciembre de 1999 y 7 de enero de 2000 por $787.50, $675.00 y $635.00 respectivamente.

**3.** Facturas de 8 de marzo de 1998, 17 de junio de 1998, 24 de mayo de 1999, 25 de agosto de 1999, 24 de agosto de 1999, de 5 de marzo de 1999, 4 de agosto de 1999, por la cantidad de $620.00, $1,190.00, $64.50 y $203.60, $53.60, $142.95, $323.00, $88.00.