# 2003 DTA 137

RECEIVED
JAN 09 2004
HARVARD LAW SCHOOL LIBRARY

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA
## PANEL I

MIRIAM DIAZ SANTANA Y RICHARD FUENTES HERNANDEZ
Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS
Demandantes-Apelados

v.

AUTORIDAD DE ACUEDUCTOS Y ALCANTARILLADOS, AMERICAN INTERNATIONAL
INSURANCE, ESTADO LIBRE ASOCIADO DE PUERTO RICO
Demandados

BERMUDEZ & LONGO, INC.
Demandantes-Apelantes

Núm. KLAN-02-00835

San Juan, Puerto Rico, a 25 de agosto de 2003

Panel integrado por su Presidenta, la Juez Pesante Martínez,
y los Jueces Rodríguez García y Salas Soler

Pesante Martínez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La apelante Bermudez & Longo, Inc. acude ante nos en el interés de que revoquemos una sentencia emitida por el Tribunal de Primera Instancia, Sala de Humacao, mediante la cual se declaró ha lugar una demanda en daños presentada por la parte aquí apelada y se le condenó a pagar solidariamente la suma de sesenta mil ($60,000.00) dólares a la demandante Miriam Díaz Santana y nueve mil ($9,000.00) dólares al demandante Richard Fuentes, más las costas y gastos del proceso e intereses legales al tipo del 2% a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la misma.

Por los fundamentos que se expondrán a continuación, se modifica la sentencia apelada en cuanto a la imposición de costas, y así modificada se confirma.

### I

El 4 de octubre de 1996, Richard Fuentes Fernández y su esposa Miriam Díaz Santana viajaban en su automóvil por la carretera PR 192 de Naguabo, como a eso de las 9:00 de la noche. Cuando pasaban frente a la fábrica Alberto VO5, del referido municipio, su automóvil cayó súbitamente en una excavación que cruzaba a todo lo ancho de la carretera. Esta excavación estaba desprovista de avisos, alarmas, iluminación o señal alguna que indicara el peligro que la mima representaba.

Contiguo al área donde ocurrió el accidente sólo había una cinta con las siglas A.A.A. indicativas de que las obras habían sido efectuadas por la Autoridad de Acueductos y Alcantarillados.

Por estos hechos, el 5 de agosto de 1997, los aquí apelados presentaron una demanda en contra del Estado Libre Asociado de Puerto Rico, de la Autoridad de Acueductos y Alcantarillado y su compañía aseguradora International Insurance, Co. Mediante la misma reclamaron por los daños sufridos a consecuencia del accidente, alegando que el mismo fue causado por la negligencia de éstos.

El Estado Libre Asociado contestó la demanda, mientras que la Autoridad de Acueductos y Alcantarillados solicitó una sentencia sumaria para que se desistiera de la acción en su contra, ya que no realizó trabajo de construcción o excavación alguna en el sector donde ocurrió el alegado accidente.

Así las cosas, el Estado Libre Asociado presentó una demanda contra tercero en contra de Puerto Rico Telephone Company, Bermúdez & Longo, Inc. y de sus respectivas compañías aseguradoras. En la misma sostuvo que la Puerto Rico Telephone Company (PRTC) contrató a Bermúdez & Longo para realizar unas obras necesarias para la instalación de registros, tuberías o cablerías soterradas en el lugar del accidente, por lo que éstos respondían a los demandantes de hallarse algún acto negligente. Posteriormente, el Tribunal de Primera Instancia dictó sentencia parcial dando por desistida a la parte demandante de su reclamación en contra de la AAA, ya que ésta demostró que no había efectuado las obras ni había participado en forma alguna en los trabajos de la excavación en controversia.

Luego de varios incidentes procesales y de un amplio descubrimiento de prueba, se celebró la vista en su fondo los días 4, 5, 6 y 21 de junio de 2001. El Tribunal apelado ordenó a las partes presentar un Memorando de Hechos y Derecho. Luego de presentados los mismos, el Tribunal dictó sentencia mediante la cual declaró ha lugar la demanda y se condenó a la parte demandada y al Estado Libre Asociado a pagar solidariamente la suma de sesenta mil ($60,000.00) dólares a la demandante y nueve mil ($9,000.00) dólares al demandante Richard Fuentes, más las costas y gastos del proceso e intereses legales al tipo del 2% a computarse sobre la cuantía de la sentencia desde la fecha en que se dictó la misma.

Bermúdez & Longo presentó una moción solicitando determinaciones de hechos adicionales y reconsideración el 1 de abril de 2002, mientras que la parte demandante presentó un memorando de costas y también presentó una moción de reconsideración en la solicitó se le impusiera a la apelante el pago de los honorarios de abogado. La apelante, por su parte, impugnó el memorando de costas presentado por los demandantes, impugnación que eventualmente fue resuelta en la negativa por el Foro apelado, al igual que las mociones que fueron previamente presentadas por esta parte.

La apelante, inconforme ante la decisión del Tribunal de Primera Instancia, presentó el recurso de epígrafe en el cual adujo la comisión de cinco errores: (1) decidir que la apelante realizó la excavación y en consecuencia de los daños causados a los demandantes; (2) estimar que hubo negligencia de parte de la apelante y que no hubo negligencia comparada de parte de los demandantes; (3) darle mayor peso probatorio al perito de la parte demandante; (4) conceder una cuantía exagerada a los demandantes; y (5) aceptar el memorando de costas presentado por la parte demandante, aun cuando el mismo no es correcto de acuerdo con el Derecho puertorriqueño.

Precisa señalar que el Estado Libre Asociado no apeló la sentencia emitida por el Tribunal de Primera Instancia; por el contrario, consignó el 50% de la cuantía concedida a los demandantes por los daños ocasionados.

Con el beneficio de los escritos de las partes, de la exposición estipulada de la prueba y del derecho aplicable al caso de autos, estamos en posición de resolver, y así lo hacemos.

## II

Por estar intrínsecamente relacionados, discutiremos los primeros cuatro errores en conjunto. Los mismos versan, en síntesis, sobre la apreciación de la prueba que hiciere el foro de instancia y sobre su determinación de declarar Con Lugar la demanda. Y luego, de modo separado, discutiremos el quinto error señalado por la apelante.

## III

La apelante, en síntesis, plantea que el Tribunal de Primera Instancia incidió al emitir un dictamen contrario a la prueba presentada. Sostiene que las conclusiones del tribunal *a quo* son claramente erróneas, lo que justifica la intervención revisora de este Tribunal. Nos compete, entonces, evaluar si mediante la sentencia apelada el foro de instancia abusó de su discreción y actuó de manera arbitraria, caprichosa y/o irracionalmente a favor de

alguna de las partes.

Es norma claramente establecida por el Tribunal Supremo de Puerto Rico que en ausencia de error manifiesto, pasión, prejuicio o parcialidad, no se intervendrá a nivel apelativo con las determinaciones de hechos y adjudicación de credibilidad hecha en instancia por el juzgador de los hechos. *Argüello v. Argüello*, ___ D.P.R. ____ (2001), **2001 J.T.S. 127**, opinión de 31 de agosto de 2001; *Trinidad v. Chade*, ___ D.P.R. ____ (2001), **2001 J.T.S. 10**, opinión de 18 de enero de 2001; *Quiñones v. Manzano*, 141 D.P.R. 139 (1996).

Un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. *Argüello v. Argüello, supra.* La determinación de credibilidad del tribunal sentenciador es merecedora de gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que él fue quien oyó y vio declarar a los testigos. *Pueblo v. Bonilla*, 120 D.P.R. 92 (1987).

El juez sentenciador, ante quien deponen los testigos, es quien tiene la oportunidad de verlos y observar su manera de declarar, de poder apreciar sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por consiguiente, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. *Argüello v. Argüello, supra. "[L]a declaración de un testigo no contradicho sobre un hecho determinado, debe merecer crédito, a no ser que su versión sea físicamente imposible, inverosímil o que por su conducta en la silla testifical se haga indigno de crédito". Miranda v. Mena,* 109 D.P.R. 473 (1980); *Alicea v. Sucn. F. Gil Rivera,* 87 D.P.R. 789 (1963).

Un tribunal apelativo no puede dejar sin efecto una sentencia cuyas conclusiones encuentran apoyo en la prueba desfilada. *Sánchez v. López*, 116 D.P.R. 172 (1985); *Pérez v. Hospital La Concepción,* 115 D.P.R. 721 (1984). No obstante, está claro que el arbitrio del juzgador de hechos es respetable, mas no absoluto. Por eso, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. *Vélez v. Srio. de Justicia,* 115 D.P.R. 533 (1984).

En conclusión, reiteramos una vez más la norma fundamental de nuestro ordenamiento jurídico de que los tribunales apelativos, en ausencia de error, pasión, prejuicio o parcialidad, no deben intervenir con las determinaciones de hechos, la apreciación de la prueba y las adjudicaciones de credibilidad realizadas por los tribunales de instancia. *Trinidad v. Chade, supra.*

A la luz de la evidencia que fue presentada por las partes y según ésta fue evaluada y aquilatada por el foro de instancia, la apelante era la única compañía que se encontraba realizando trabajos en la carretera PR 192 al momento en que ocurrió el accidente que originó el presente pleito. Aún así, la apelante sostuvo y aún sostiene que fue la A.A.A. quien realizó la excavación que causó el accidente. La apelante no presentó ante el foro de instancia ni ante nuestra consideración evidencia que sostenga sus alegaciones.

Por el contrario, precisa señalar que el Tribunal de Instancia desestimó la acción en cuanto a la A.A.A. mediante sentencia parcial emitida el 11 de mayo de 1998, sentencia que pudo ser apelada antes de que la misma adviniera final y firme el 13 de abril de 2003. Al no apelarse la misma, la apelante, con su inacción, aceptó la decisión del Tribunal, la cual en este momento no admite cuestionamiento alguno.

Según la sentencia, tanto la prueba testifical ■ como la amplia prueba documental presentada demuestran que la apelante fue contratada para hacer excavaciones en el asfalto y áreas verdes para la instalación de conductores soterrados y registros a lo largo de la carretera PR 192. Estos trabajos no habían concluido al momento de ocurridos los hechos debido a que faltaban por corregir deficiencias notificadas por el Departamento de Transportación y Obras Públicas (DTOP) que representaban un riesgo para el tránsito local.

De estos hechos claramente se desprende la responsabilidad de la apelante por el accidente ocurrido.

En relación al requerimiento de la apelante de que se determinara la existencia de negligencia comparada, ya que no hubo prueba de que la excavación era peligrosa, el mismo no puede sostenerse.

Bermúdez & Longo tenía la obligación de instalar las señales necesarias para seguridad de los que por allí transitaban. Según lo dispuesto en el contrato suscrito con el DTOP, ésta tenía que proveer y/o instalar señales, barreras, grillas o cualquier otro artefacto de iluminación en horas de la noche como señales de precaución para las personas y/o vehículos que transitaban por las cercanías del proyecto.

El examen de la totalidad de la prueba que se ha sometido ante nuestra consideración nos convence de que el Tribunal de Instancia no cometió error al evaluar la prueba, esto ya que la mayoría de las alegaciones de la parte apelante son simplemente eso, meras alegaciones, no sostenidas en evidencia que demuestren la certeza de las mismas.

Por otro lado, y en cuanto a las sumas concedidas por el Tribunal de Primera Instancia a los apelados, concluimos que las mismas deben ser confirmadas.

En nuestro ordenamiento, la responsabilidad civil en daños y perjuicios postula el deber de resarcir al damnificado, otorgándole un valor económico al daño sufrido. *Rivera v. Tiendas Pitusa,* ___ D.P.R. ___ (1999), **99 J.T.S. 107**, opinión de 28 de junio de 1999; *S.L.G. v. F.W. Woolworth & Co.,* 143 D.P.R. 76 (1997); *García Pagán v. Shiley Caribbean, etc.,* 122 D.P.R. 193 (1988).

Por daño se entiende todo aquel menoscabo material o moral que a consecuencia de un acontecimiento o evento determinado sufre una persona, ya bien sea en sus bienes vitales naturales, en su propiedad o en su patrimonio. *Cintrón v. Gómez,* 147 D.P.R. 576 (1999); *Galib Frangie v. El Vocero de P.R.,* 138 D.P.R. 560 (1995); *García Pagán v. Shiley Caribbean, etc., supra.*

El resarcimiento o indemnización pecuniaria consiste en atribuir al perjudicado la cantidad de dinero suficiente para compensar su interés perjudicado. Es como una subrogación real en que el dinero ocupará el lugar de los daños y perjuicios sufridos, siendo una atribución pecuniaria que crea una situación patrimonial que equivale a la destruida por el daño causado. *Rivera v. Tiendas Pitusa, supra; S.L.G. v. F.W. Woolworth & Co., supra; García Pagán v. Shiley Caribbean, etc., supra.* Ocasionado un menoscabo en la esfera jurídica de otra persona, la reparación que procede consiste en reintegrar esa esfera lesionada a su estado anterior al daño. Sólo cuando no sea posible esa reintegración al estado originario, se acudirá a verificar la reparación en dinero. *Galib Frangie v. El Vocero de P.R., supra; Rodríguez Cancel v. A.E.E,* 116 D.P.R. 443 (1985).

Por lo que la reparación puede verificarse de dos formas: (1) la reparación natural o reintegración en forma específica, o (2) la indemnización en dinero. Estas dos alternativas son mutuamente excluyentes. *Galib Frangie v. El Vocero de P.R., supra; Rodríguez Cancel v. A.E.E., supra.* La alternativa inicial de restablecer al perjudicado a la situación en que se hallaba antes de sufrir el daño constituye la solución ideal, por lo que únicamente debe acudirse a la indemnización en dinero si el restablecimiento de la condición original no es factible. *Galib Frangie v. El Vocero P.R., supra.*

En el segundo caso, el dinero muchas veces no puede ser compensado con el dolor padecido, pero con éste se persigue proporcionar a la víctima una compensación que, sin llegar a devolverle lo perdido, le permita procurarse placeres y satisfacciones, psíquicas o mentales, aptas para atenuar el dolor sufrido. *Cintrón Adorno v. Gómez, supra; Riley v. Rodríguez de Pacheco,* 119 D.P.R. 762 (1987). El derecho a ser compensado no puede derrotarse meramente por el carácter especulativo que en alguna medida supone el cómputo de los daños. *Rivera v. Tiendas Pitusa, supra, S.L.G. v. F.W. Woolworth & Co., supra.*

No obstante, al medir los daños en un caso, el juzgador debe hacerlo sobre una estricta base de correspondencia con la prueba, procurando siempre que la indemnización no se convierta en una industria y que no lesione la economía. Este deber de los jueces tiene el propósito de conservar el sentido remediador y no punitivo de nuestra responsabilidad civil. *Rivera v. Tiendas Pitusa, supra; S.L.G. v. F.W. Woolworth & Co., supra.* Por ejemplo, los sufrimientos mentales y físicos son cuantificables al infinito, por lo que sin unos límites razonables, la indemnización dejaría de tener la característica de resarcimiento para convertirse en una punitiva. *Riley v. Rodríguez de Pacheco, supra.*

El Tribunal de Primera Instancia no tiene discreción para imponer a la parte demandada el pago de una cuantía arbitraria o excesiva, que se aparte de la finalidad reparadora del estatuto. *Blas v. Hosp. Guadalupe*, 146 D.P.R. 267 (1998); *S.L.G. v. F.W. Woolworth & Co., supra.*

Esbozada la normativa anterior, y tomando en consideración los daños sufridos por los apelados, y que al foro apelado le mereció mayor credibilidad el informe pericial brindado por el Dr. Berríos, en el cual se concluyó que la demandante sufrió una incapacidad en un 10% de sus funciones fisiológicas generales. Según la incapacidad determinada por éste, la apelada padecerá por el resto de su vida de desvelos, de fuertes dolores en el cuello por los que se tendrá que mantener tomando pastillas. Además, determinó que se afectó la autoestima de la apelada al verse incapacitada frente a su esposo e hijos y no poder mejorar la condición económica de la familia al estar impedida de emplearse en los puestos para los cuales se preparó académicamente.

A la luz de la prueba desfilada, y de todo lo anteriormente expuesto, concluimos que la cantidad concedida a los apelados por el Tribunal de Instancia nos parece justa.

## IV

En el quinto error, la parte apelante cuestiona la validez de ciertas partidas aprobadas como costas por el tribunal de instancia.

El tribunal aprobó el memorando de costas sometido por la suma total de ochocientos ochenta y nueve dólares con veinticinco centavos ($889.25). De estas costas, la peticionaria cuestiona las siguientes partidas:

*"(1) Emplazamientos a:*

*American International Insurance*

*Autoridad de Acueductos y Alacantarillados*

*Secretario de Justicia*

*$100.00*

*(2) Diligenciamiento de citaciones a:*

*Cándido Garay*

*$35.00*

*Pablo Ortiz*

*$35.00*

*(3) Comparecencia a vista del 4 y 5 de junio de 2001:*

*Cándido Garay*

*$40.00"*

La apelante Bermúdez & Longo alega que las partidas impugnadas no son gastos necesarios y razonables, ya que no estuvieron relacionados con su participación dentro del pleito.

La Regla 44.1(a) de las de Procedimiento Civil del 1979, 32 L.P.R.A. Ap. II, establece que las costas se concederán a la parte a cuyo favor se resolvió el pleito. También dispone que costas son *"los gastos [razonables] incurridos necesariamente en la tramitación del pleito."* En el caso normativo de *Garriga Jr. v. Tribunal Superior*, 88 D.P.R. 245 (1963), el Tribunal Supremo de Puerto Rico expresó que costas *"no son todos los gastos que ocasiona la litigación"*. Cuevas Segarra, *Práctica Procesal Puertorriqueña*, Cap. IV, págs. 235-248, **Publicaciones JTS**.

Tomando en consideración estas normas generales, analicemos las partidas impugnadas. En primer lugar, los emplazamientos realizados a American International Insurance, a la Autoridad de Acueductos y Alcantarillados y al Secretario de Justicia.

Alega la apelante que dicha partida no era ni razonable, ya que con relación a las alegaciones de la parte demandante-apelada en su contra no era necesario emplazar a ninguna de las partes antes mencionadas. Sostuvo además por haberse allanado la parte demandante a la sentencia sumaria presentada por la Autoridad de Acueductos y Alcantarillados y su compañía aseguradora, no puede ahora pretender recobrar de la apelante los gastos generados por los emplazamientos cursados a dichas partes. No le asiste la razón.

El tribunal de instancia estimó que el diligenciamiento de los emplazamientos a las partes mencionadas era necesaria y que la cuantía pagada era una razonable. Este fundamento nos convence, ya que la parte demandante apelada tenía que emplazar a la AAA y su compañía aseguradora ante la creencia de que éstas tenían algún tipo de responsabilidad sobre el accidente ocurrido. A esto se adiciona el hecho de que la apelante solicitó mediante demanda contra tercero traer nuevamente al pleito a las partes que ahora cuestiona. Expuesto lo anterior, somos de la opinión que la apelante no ha demostrado que el tribunal de instancia cometiera un abuso de discreción. Este error no se cometió.

Respecto a la impugnación de las partidas sometidas en relación con el diligenciamiento de las citaciones hechas a Pablo Ortiz y Cándido Garay, y sobre la comparecencia de este último a las vistas del 4 y 5 de junio de 2001, debemos determinar que la misma procede. Ninguna de las dos personas antes mencionadas compareció y/o testificó en la vista en su fondo, hecho que fue aceptado aun por la propia demandante. De otra parte precisa señalar que el testigo Cándido Garay fue renunciado por los demandantes durante la tramitación del pleito. Al no ser los anteriores gastos necesarios incurridos durante la tramitación del pleito, no procede el cobro de las mismas, por lo que debe descontarse del memorando de costas sometido la cantidad de ciento diez dólares ($110.00) correspondiente a los mismos.

Por todo lo antes expuesto, se dictará sentencia modificando la Sentencia del foro apelado, a fin de que se excluyan las partidas asignadas a los diligenciamientos de citaciones del Sr. Cándido Garay y Pablo Ortiz, y la de la comparencia del Sr. Cándido Garay a las vistas de 4 y 5 de junio de 2001. Así modificada, la sentencia apelada se confirma.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida I. Oquendo Graulau
Secretaria General

**ESCOLIO 2003 DTA 137**

**1.** Testimonio de José M. Carlo y Nelson Camacho, quienes eran empleados de la compañía apelante; y el testimonio del Sr. Ricardo Serrano Ruiz, guardia de seguridad de la fábrica Alberto VO5.