*770 TEXTO COMPLETO DE LA SENTENCIA
El Estado Libre Asociado de Puerto Rico, en adelante el apelante o el E.L.A., apela ante este foro de una sentencia dictada el 30 de noviembre de 2004 por la Sala Superior de San Juan del Tribunal de Primera Instancia, en adelante el T.P.I. En dicha sentencia se responsabilizó al E.L.A., a través del Departamento del Trabajo y Recursos Humanos, en adelante el D.T.R.H., por haber permitido la prescripción de cierta causa de acción por despido injustificado y de discrimen por edad del apelado Felipe Aponte Cruz, en adelante Aponte.
Contando con los alegatos de las partes y con la evidencia documental anejada a los mismos, estamos en posición de disponer del recurso, lo que a continuación hacemos.
I
De entrada, reseñamos los hechos e incidentes procesales pertinentes a los planteamientos de las partes.
El 3 de febrero de 1992, Aponte fue cesanteado por su entonces patrono Internacional Home Sales Corp. El patrono notificó al personal que debido a una difícil situación económica por la que alegadamente atravesaba, se veía obligado a cesantear personal. Aponte llevaba entonces trabajando con esa empresa cerca de tres años y contaba con 52 años de edad.
El 27 de abril de 1992, Aponte presentó una querella ante la Unidad Antidiscrimen (U.A.D.) del D.T.R.H. También se querelló por despido injustificado. Esto lo hizo al percatarse que el patrono había retenido en la misma clasificación de puesto o de las funciones que él realizaba a otro empleado de menor antigüedad, que entonces contaba con 23 años de edad; y que alrededor de dos meses después de su cesantía, también había reclutado a dos empleados, uno de 27 y otro de 38 años de edad, para desempeñar las mismas funciones que antes él realizaba. En su querella, Aponte alegó despido injustificado y discriminatorio.
Luego de la investigación de rigor, la U.A.D. del D.T.R.H. celebró una vista a la que comparecieron Aponte y representantes del patrono. El 10 de septiembre de 1993, la U.A.D. emitió un informe determinando causa probable contra el patrono por razón de discrimen por edad. En consecuencia, el 17 de mayo de 1994, la U.A.D. refirió el caso al Negociado de Asuntos Legales del D.T.R.H. para que se iniciara la litigación de la causa de acción. El 25 de mayo siguiente, el D.T.R.H. refirió el caso al Ledo. Héctor Urgell Cuebas para su evaluación y acción correspondiente. 
Cuando el D.T.H.R. refirió el caso de Aponte al licenciado Urgell Cuebas, tanto la causa de acción por discrimen como la de despido injustificado aún estaban vivas; y en el caso por discrimen, el término de un año *771 para presentarlo en los tribunales debía expirar luego del 10 de septiembre de 1994. 
Tomamos conocimiento judicial que el licenciado Urgell Cuebas fue nombrado Juez del Tribunal del Circuito de Apelaciones el 28 de febrero de 1995. 138 D.P.R. pág. LII.
El 18 de enero de 1995, el licenciado Wilfredo Marcial González, en representación del Bufete del licenciado Urgell Cuebas, escribió al D.T.R.H. informado que el caso de Aponte aún estaba bajo estudio y análisis, pero que él (licenciado Marcial) no tenía contrato con dicho departamento. El 19 de abril de 1995, el D.T.R.H. contrató al licenciado Marcial para continuar con los casos que antes se le habían asignado al licenciado Urgell Cuebas.
El contrato con el licenciado Marcial terminó el 19 de abril de 1997. El día antes, 18 de abril de 1997, el licenciado Marcial remitió al D.T.R.H., sin más detalles, una lista de los casos que se le habían referido y en los cuales, conforme a su análisis, no había causa de acción para presentarlos en los tribunales o habían prescrito. En esa lista estaba incluido el caso de Aponte. 
Por entender que el D.T.R.H. y sus abogados tramitarían su reclamación en los tribunales, Aponte se comunicó varias veces con el Negociado de Asuntos Legales del D.T.R.H. para indagar sobre el estado de su caso. Allí se le informaba que el mismo se encontraba en trámite en el tribunal y que debía esperar que se comunicaran con él.
Así las cosas, en julio de 2000, Aponte visitó al D.T.R.H. donde se entrevistó con la Leda. Evelyn Cruz Gómez, del Negociado de Asuntos Legales del D.T.R.H., quien al revisar el expediente del caso le informó que sus causas de acción por despido y discrimen nunca fueron llevadas a los tribunales y que ya había transcurrido el término de ley para presentarlas. Estas averiguaciones indignaron a Aponte, quien se sintió decepcionado al no poder reclamar ya nada contra el patrono que lo despidió injustificadamente y que discriminó contra él. En su testimonio ante el T.P.I., Aponte aseveró que se sintió engañado y que sufrió profunda angustia y pesar por lo ocurrido.
El 8 de septiembre de 2000, Aponte presentó contra el E.L.A., el D.T.R.H. y sus aseguradores, una demanda por alegados daños y perjuicios sufridos. Imputó negligencia al D.T.R.H. por permitir la prescripción de la causa de acción por discrimen que la U.A.D. determinó existía, perdiendo así sus derechos a ser indemnizado. Señaló actuaciones negligentes de los empleados del D.T.R.H. El E.L.A. contestó la demanda negando en esencia las alegaciones de la misma e interponiendo algunas defensas afirmativas.
El 31 de enero de 2001, el E.L.A. interpuso una demanda de tercero contra el licenciado Marcial, en la que alegó que habiendo siendo designado Juez el licenciado Urgell Cuebas, desde el 28 de febrero de 1995, los casos pendientes y asignados a éste habían sido asignados al licenciado Marcial, quien formaba parte del Bufete del licenciado Urgell Cuebas. Planteó que el licenciado Marcial era el responsable en evaluar y tramitar la acción legal correspondiente a la causa de acción de Aponte; y que la inacción y omisión del licenciado Marcial fue la que causó que la causa de acción prescribiera. Peticionó así el E.L.A. que de tener que indemnizar a Aponte, el licenciado Marcial respondía como tercero demandado.
El 2 de agosto de 2002, el licenciado Marcial presentó al T.P.I. una solicitud para que se dictara sentencia sumaria a su favor. Planteó haber cumplido fielmente con su responsabilidad. profesional, al hacer una evaluación y análisis jurídico del caso de Aponte que lo condujo a determinar, en representación del licenciado Urgell Cuebas, que no había causa de acción alguna, ni por discrimen por edad, ni por despido injustificado. Acompañó con su solicitud un extenso apéndice con evidencia documental y con una declaración jurada suya en la que hacía constar que desde el segundo semestre de 1994 y hasta enero de 1995 había prestado ayuda al Bufete del licenciado Urgell Cuebas; que en enero de 1995 suscribió un informe en el que detalló los casos *772 referidos por el D.T.R.H., entre los cuales estaba el de Aponte, sobre el que concluyó que estaba prescrito o no tenía méritos.
Oída la posición de las partes, el 29 de octubre de 2002, el T.P.I. dictó una sentencia parcial declarando con lugar la solicitud de sentencia sumaria presentada por el licenciado Marcial, desestimando así la demanda de tercero del E.L.A. y del D.T.R.H. contra el licenciado Marcial. Concluyó el T.P.I. particularmente que "... la prueba preponderante señala que el Lie. Marcial evaluó el caso y en su opinión experimentada determinó que no había caso, que entregó el caso al Departamento y éste dio por terminado el caso el 30 de abril de 1997... ”. Añadió entonces el foro de instancia que “[ejxiste controversia sobre la notificación al cliente, pero ello estaba bajo el control absoluto del Departamento del Trabajo y no es impedimento para que resolvamos la reclamación contra el Ledo. Wilfredo Marcial y su esposa. ” 
Así el trámite, el 3 de marzo de 2004 se celebró el acto del juicio ante el T.P.I. para ventilar la demanda contra el E.L.A. y el D.T.R.H. Las partes presentaron prueba documental y testifical en apoyo a sus respectivas alegaciones. Por el resultado de la prueba presentada, el T.P.I. dictó la sentencia que es objeto de apelación en el presente recurso. En la misma dictaminó que la omisión y negligencia del E.L.A. y del D.T.R.H. provocó que prescribiera la causa de acción de Aponte, “para la cual contaba con prueba fuerte y robusta, tendente a evidenciar la ocurrencia de los eventos discriminatorios ... ” del patrono.
Tomando como base la Ley Núm. 100, supra, el T.P.I. consignó en su sentencia ciertos cálculos numéricos de lo que Aponte hubiera tenido derecho a recibir si su causa de acción por discrimen hubiera sido adjudicada por un tribunal. A fin de cuentas, estimó en $112,400 la valoración de los daños sufridos, pero limitó la suma a ser concedida a $75,000, en virtud de los límites establecidos en la Ley de Pleitos contra el Estado, Ley Núm. 104 de 29 de junio de 1955, según enmendada (Ley Núm. 104), 32 L.P.R.A. see. 3077 et seq. Concedió una compensación adicional de $20,000 por una segunda causa de acción planteada, relativa a angustias y sufrimientos emocionales. Al pie de su sentencia, el T.P.I. hizo las siguientes aseveraciones:

“En fin, hemos examinado la controversia que nos corresponde resolver, según los hechos probados, la preponderancia de prueba y la credibilidad que nos merecieron los testigos. Ciertamente, la totalidad de las acciones acusa indiferencia, descuido y pobre juicio por parte de los empleados, funcionarios y agentes del Departamento del Trabajo y Recursos Humanos.

Este Tribunal no tiene dudas en cuanto a que existe una relación directa entre los daños del demandante y las actuaciones de los funcionarios y agentes del Departamento del Trabajo.

De tales señalamientos de negligencia y omisión responde la demandada Estado Libre Asociado de Puerto Rico, quien es responsable por los perjuicios causados por sus empleados en ocasión de sus funciones, siendo responsable además, en ese concepto, en las mismas circunstancias y condiciones en que sería responsable un ciudadano particular...”.

II
En su alegato de apelación, el E.L.A. señala los siguientes errores en la sentencia del T.P.I.:

“A. Erró el Tribunal de Primera Instancia al determinar que el Estado Libre Asociado de Puerto Rico es responsable por haber dejado prescribir la causa de acción del demandante-apelado y que, por lo tanto, responde por las reclamaciones bajo el Artículo 1802 del Código Civil de Puerto Rico y la Ley de Reclamaciones y Demandas y Demandas contra el Estado, cuando de la evidencia presentada se desprende que el demandante y apelado fue el único responsable de los alegados daños.

B. Erró el Tribunal de Primera Instancia al ordenar a pagar al demandante-apelado la cantidad de 
*773
$75,000.00, por lo ingresos dejados de percibir bajo la Ley Número 100 de 30 de junio de 1959, según enmendada, conocida como la Ley Contra Discrimen en el Empleo, 29 L.P.R.A. see. 146 et seq., y $20,000.00 en concepto de sufrimientos y angustias mentales por no existir prueba al efecto.”

La contención principal del E.L.A. es que el apelado Aponte fue el responsable de dejar prescribir las causas de acción y de los daños que alega haber sufrido, por lo que no procedía la indemnización concedida por el T.P.I. bajo la Ley Núm. 100, supra; como tampoco la indemnización por concepto de sufrimientos y angustias mentales, por no haberse presentado prueba sobre las mismas
Adujo, además, que mediante la sentencia parcial dictada a favor del licenciado Marcial, el T.P.I. ya había concluido que Aponte carecía de una causa de acción contra su expatrono; y que no había aportado evidencia alguna para demostrar que el criterio profesional del licenciado Marcial estaba equivocado. En consecuencia, invocó la aplicación de la doctrina de cosa juzgada a la controversia. Insistió en que la sentencia final dictada por el T.P.I. es contradictoria con la sentencia parcial anteriormente dictada a favor del licenciado Marcial.
En su alegato, el apelante Aponte sostiene que la prueba tomada en cuenta por el T.P.I. para establecer sus determinaciones de hechos se fundamentó en gran medida en la estipulación que en el juicio hicieron ambas partes del informe y decisión de la U.A.D. del D.T.R.H. En dicho informe se concluyó que Aponte había sido objeto de discrimen patronal por edad. Enfatizó que la estipulación convenida incluyó no tan sólo el contenido del informe, sino la autenticidad de los documentos que lo acompañaron.
Arguye el apelado, además, que durante el juicio el E.L.A. no aportó prueba testifical ni documental alguna para destruir o atacar la prueba fáctica y documental estipulada por las partes. Concluyó planteando que a tenor con el Artículo 1802 del Código Civil, supra, procedía indemnizarlo por los daños sufridos, incluyendo los daños morales; y que el T.P.I. estimó una cuantía razonable para compensar los mismos.
III
Antes de fijar nuestra posición sobre la sentencia dictada y de la cual se apela, es necesario que tengamos presente la siguiente normativa jurídica aplicable a la cuestión planteada.
A
La Responsabilidad Civil por Daños
En nuestra jurisdicción, la responsabilidad civil derivada de actos u omisiones culposas o negligentes se rige por lo dispuesto en el Artículo 1802 del Código Civil. Admor. F.S.E. v. A.N.R. Construction, 163 D.P.R. - (2004), 2004 J.T.S. 162; Montalvo v. Cruz, 144 D.P.R. 748, 755 (1998); J.A.D.M. v. Centro Com. Plaza Carolina, 132 D.P.R. 785 (1993); Elba A.B.M. v. U.P.R., 125 D.P.R. 294 (1990); Valle v. Amer. Inter. Ins. Company. 108 D.P.R. 692 (1979); Gierbolini v. Employers Fire Ins. Co., 104 D.P.R. 853 (1976).
Nuestro Tribunal Supremo ha señalado, al referirse específicamente a la conducta por omisión o inacción, que al determinar si incurrió o no en responsabilidad civil resultante de una omisión, los tribunales deberán considerar varios factores, a saber: (1) la existencia o inexistencia de un deber jurídico de actuar por parte del alegado causante del daño; y (2) si de haberse realizado el acto omitido, se hubiera evitado el daño. Admor. F.S.E. v. A.N.R. Construction, supra; Soc. Gananciales v. G.Padín, Inc., 117 D.P.R. 94, 106 (1996). También se ha sostenido que la ocurrencia de una omisión sólo da lugar a una causa de acción en los casos en que exista un deber de actuar. Admor. F.S.E. v. A.N.R. Construction, supra; Elba A.B.M. v. U.P.R., supra. Así mismo, se ha resuelto que una omisión genera responsabilidad, siempre que la misma constituya conducta antijurídica imputable. Admor. F.S.E. v. A.N.R. Construction, supra; Arroyo López v. E.L.A., 126 D.P.R. 682, 686 (1990).
*774 En resumen, para que ocurra un acto negligente como resultado de una omisión, tiene que existir un deber de cuidado impuesto o reconocido por ley, y que ocurra el quebrantamiento de ese deber. Si la omisión del alegado causante del daño quebranta un deber impuesto o reconocido por ley de ejercer, como lo haría un hombre prudente y razonable aquel grado de cuidado, diligencia, vigilancia y precaución que las circunstancias le exigen. Admor. F.S.E. v. A.N.R. Construction, supra.
El criterio rector para determinar si es responsabilidad por una omisión es contestar la interrogante de “si existía un deber jurídico de actuar por parte del alegado causante del daño”. Admor. F.S.E. v. A.N.R. Construction, supra; Arroyo López v. E.L.A., supra.
B
La Lev Núm. 100 y la Lev Núm. 80
La Ley Núm. 100, supra, le impone al Secretario del D.T.R.H. el deber de velar porque los patronos no discrimen contra los empelados por razón de edad, raza, color, sexo, origen social o nacional, condición social, afiliación política, ideas políticas o religiosas. 29 L.P.R.A. see. 146. A tales efectos, el Secretario está autorizado a llevar a cabo todas las investigaciones o inspecciones necesarias para determinar si un patrono discrimina contra sus empleados. 29 L.P.R.A. see. 150.
Todo empleado que se sienta discriminado por su patrono tiene el derecho a promover una querella en el D. T.R.H. Se dispone en el Artículo 5 de la Ley Núm. 100, supra, lo siguiente.
“Cuando se presente una querella por discrimen en el Departamento del Trabajo y Recursos Humanos, el término prescriptivo de un año para iniciar la acción judicial quedará interrumpido al notificársele la querella al patrono o querellado, siempre y cuando que la notificación se efectúe dentro de dicho término prescriptivo. Dicho término orescrivtivo quedará, además, en suspenso o consejado mientras la querella se continúe tramitando en el Departamento del Trabajo y Recursos Humanos y no se haya notificado al querellado la determinación del Secretario de dicho Devartamento sobre la reclamación. Si mientras se está tramitando la reclamación en el Departamento del Trabajo y Recursos Humanos, el querellante solicita que se le permita retirar la querella o manifiesta que no desea continuar con dicho trámite, el término vrescrivtivo antes aludido comenzará nuevamente a partir de la fecha en que el Secretario del Trabajo y Recursos Humanos notifique de su determinación a las varíes. En los demás casos, el término prescriptivo se interrumpirá con la reclamación extrajudicial, con la radicación de la acción judicial correspondiente o por el reconocimiento de la deuda por parte del patrono o de su agente autorizado.” 29 L.P.R.A. see. 150 (Subrayado nuestro)
La Ley Núm. 80 de 30 de mayo de 1976, según enmendada (Ley Núm. 80), 29 L.P.R.A. sec. 185a et seq., establece la indemnización a que tendrá derecho todo empleado, contratado sin tiempo determinado, que sea despedido sin justa causa. García v. Aljoma Lumber, Inc., 162 D.P.R. _ (2004), 2004 J.T.S. 131; Acevedo v. Western Digital Caribe, Inc., 140 D.P.R. 452, 459 (1996). La Ley Núm. 80 es el remedio exclusivo que bajo nuestra legislación tiene el empleado que es despedido sin justificación. No obstante, si con el despido concurren otras actuaciones torticeras independientes al despido, también puede responsabilizarse el patrono por dichas actuaciones. Porto y Siurano v. Bentley P.R., Inc. 132 D.P.R. 331, 343 (1992).
C
La Lev de Pleitos Contra el Estado
Mediante la Ley Núm. 104, supra, se autoriza a una persona a demandar al E.L.A. en acciones por daños y perjuicios, bien a su persona o a su propiedad, hasta la suma de $75,000 cuando los daños hayan sido causados por acción u omisión de cualquier funcionario, agente o empleado del Estado; o por cualquier otra persona *775 actuando en capacidad oficial y dentro del marco de su función, cargo o empleo, cuando haya intervenido culpa o negligencia. 32 L.P.R.A. see. 3077.
Se ha reiterado que el E.L.A. es responsable por actos negligentes de sus funcionarios o empleados en el ejercicio de sus funciones discrecionales rutinarias. Piñeiro Manzano v. E.L.A., 102 D.P.R. 795, 802-803 (1974). De otro lado, también se ha resuelto que no tiene derecho a demandar al E.L.A. en daños o perjuicios una persona adulta cuando los hechos que sirven de base a su reclamación constituyen una falta de debido cuidado de su parte. Ortiz v. E.L.A., 102 D.P.R. 450, 451 (1974).
IV
Aplicada la normativa jurídica antes esbozada a los hechos e incidentes procesales que dieron base al recurso, somos de opinión que la sentencia del T.P.I. debe ser confirmada, pero también modificada.
El planteamiento medular del E.L.A. contra la sentencia apelada es que no procedía imponer responsabilidad al Estado por los daños sufridos por el apelado, porque la evidencia presentada ante el T.P.I. demostraba que fue éste el único responsable de los daños. No le asiste la razón.
Sabido es que la Ley Núm. 104, supra, autoriza al ciudadano a demandar al E.L.A. en acciones por daños y perjuicios, cuando éstos hayan sido causados por sus funcionarios, empleados o agentes en el ejercicio de sus funciones discrecionales rutinarias. Véase Piñeiro Manzano v. E.L.A.; supra.
De los autos surge que el T.P.I. antes de dictar sentencia tuvo el beneficio de recibir prueba oral y documental que le llevó a concluir que el D.T.R.H. incidió en un comportamiento descuidado y de pobre juicio en el manejo de la querella o reclamación del apelado. Somos del criterio que el D.T.R.H. omitió darle adecuado seguimiento al referido del caso del apelado al Bufete del Ledo. Héctor Urgell Cuebas. Esta omisión inició el surgimiento de la causa de acción del apelado. El D.T.R.H. descansó, sin más gestiones, en que en dicho bufete actuaría dentro de los términos prescriptivos aplicables a la reclamación del apelado, lo que no debió haber hecho, dada la responsabilidad del Secretario de velar porque no se discrimine contra trabajadores y empleados. Véase 29 L.P.R.A. see. 146.
La actuación de dejadez y negligencia del D.T.R.H. la evidencia el hecho que cuando el 18 de enero de 1995 el licenciado Marcial, en representación del Bufete del licenciado Urgell Cuebas, escribió al D.T.R.H. informándole que el caso de Aponte aún estaba bajo estudio y análisis, ya la causa de acción por discrimen estaba prescrita desde el mes de septiembre de 1994. El D.T.R.H. tenía el deber de asegurarse que la evaluación del caso por el abogado al que se asignó se hiciera antes del vencimiento del término prescriptivo para instar acción judicial. Se incidió en una omisión culposa y negligente. Véase Admor. F.S.E. v. A.N.R. Construction, supra; Montalvo v. Cruz, supra; J.A.D.M. v. Centro Com. Plaza Carolina, supra; Elba A.B.M. v. U.P.R., supra; Valle v. Amer. Inter. Ins. Company., supra; Gierbolini v. Employers Fire Ins. Co., supra.
Imponerle a un trabajador, que confía su reclamación laboral al D.T.R.H., que se comunique con el abogado al que se le refirió la misma, sin advertirle con claridad que ese abogado no tenía sus oficinas en el departamento y que se trataba de un abogado en la práctica privada bajo contrato, resulta ser una actuación poco juiciosa. Nos parece que en el curso ordinario del desempeño humano, sobre todo cuando se trata de un trabajador lego en asuntos de litigación, lo normal y lógico sea que el trabajador que confía sus reclamos a una agencia gubernamental indague directamente con dicha agencia sobre el estado de su reclamación. Por tanto, en el caso de autos no estamos ante actuaciones descuidadas de un reclamante que pueden dar base para la desestimación de su causa de acción. Véase Ortiz v. E.L.A., supra.
Somos de opinión que el apelado actuó con razonable prudencia cuando inquirió en varias ocasiones al Negociado de Asuntos Legales del D.T.R.H. sobre su querella o reclamación.
*776 Al concluir el T.P.I. en su sentencia que el Estado y sus agentes habían actuado negligentemente en el trámite de la querella o reclamación del apelado, fue enfático que lo hizo respondiendo a los hechos que entendió probados, la preponderancia de la prueba y la credibilidad que le merecieron los testigos. Es norma reiterada que las determinaciones de hechos y la adjudicación de credibilidad que hace un tribunal de instancia son merecedoras de gran deferencia por parte de los tribunales apelativos. No habiendo encontrado que en su sentencia el T.P.I. haya actuado con pasión, prejuicio, parcialidad o error manifiesto, no debemos intervenir con sus determinaciones de hechos. Álvarez de Choudens, et al. v. Rivera, 165 D.P.R. _ (2005), 2005 J.T.S. 90; López Delgado v. Cañizares, 163 D.P.R. _ (2004), 2004 J.T.S. 165; Hernández v. San Lorenzo Construction, 153 D.P.R. 405 (2001).
En cuanto al apuntamiento del E.L.A. de que con la sentencia parcial dictada por el T.P.I. a favor del licenciado Marcial se había concluido que Aponte carecía de una causa de acción por discrimen contra su expatrono, invocando la aplicación de la doctrina de cosa juzgada, tampoco le asiste la razón.
Para que pueda aplicarse la doctrina de cosa juzgada en el caso resuelto por la sentencia y aquél en que esta sea invocada, debe existir la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que fueron. Artículo 1204 del Código Civil, 31 L.P.R.A. sec. 3343; Méndez v. Fundación, 165 D.P. R. _ (2005), 2005 J.T.S. 106; Worldwide Food Dis., Inc. v. Colón et al., 133 D.P.R. 827 (1993); Rodríguez Rodríguez v. Colberg Comas, 131 D.P.R. 212 (1992); Lausell Marxuach v. Díaz de Yáñez, 103 D.P.R. 533 (1975).
En el presente caso, el apelado no instó causa de acción alguna contra el licenciado Marcial. Este letrado fue traído al pleito por el E.L.A. en calidad de tercero demandado. Independientemente de si fue correcto o no dictar sentencia parcial a favor del licenciado Marcial, la cual el E.L.A. no cuestionó ante este foro apelativo, entendemos que no estamos ante una situación donde sea de aplicación la doctrina de cosa juzgada. Esta doctrina no es absoluta y debe siempre considerarse conjuntamente con el saludable principio de que debe dispensarse justicia en cada caso. Méndez v. Fundación, supra; Mun. de San Juan v. Bosque Real S.E., 158 D.P.R. _ (2003), 2003 J.T.S. 33; Pagán Hernández v. U.P.R., 107 D.P.R. 720 (1978); Mercado Riera v. Mercado Riera, 100 D.P.R. 940, 950 (1972). Además, los tribunales debemos abstenemos de aplicar esta doctrina cuando al hacerlo se derrotan o se desvirtúan los fines de la justicia, se producen resultados absurdos o cuando se plantean consideraciones de interés publico. Pagán Hernández v. U.P.R., supra; P.R.T.C. v. Unión Indp. Emp. Telefónicos, 131 D.P.R. 171, 194 (1992); Feliciano Ruiz v. Alfonso Development Corp., 96 D.P.R. 108, 114 (1968).
Como segundo error en la sentencia del T.P.I., el E.L.A. cuestiona la indemnización o compensación de $75,000 concedida por los daños pecuniarios sufridos por el apelado, como consecuencia de haber permitido la prescripción de su causa de acción por discrimen por edad. Sobre este particular, no nos parece irrazonable que el T.P.I. haya tomado como base para calcular dichos daños los criterios o parámetros establecidos en la Ley Núm. 100, supra. Después de todo, independientemente de la utilización de dichos criterios como guía de valoración de daños, el T.P.I. conformó los mismos al límite establecido en la Ley Núm. 104, supra. A nuestro juicio no incidió en error.
Ahora bien, en cuanto al cuestionamiento que hace el E.L.A. de la concesión por el T.P.I. al apelado de $20,000 por concepto de sufrimientos y angustias mentales, por no haberse presentado prueba para establecerlos, somos de opinión que tiene razón.
En cuanto a la valoración y mensura de daños, se ha sostenido que el juzgador debe valorar los mismos en estricta correlación con la prueba presentada, procurando mantener un sentido remediador sin aproximarse al elemento punitivo. Rivera v. SLG Díaz, 165 D.P.R. _ (2005), 2005 J.T.S. 121: SLG v. Woolworth, 143 D.P.R. 76 (1977). A los fines de cumplir con este principio doctrinal, se ha reiterado que el reclamante de un daño *777 debe presentar evidencia que sustente que realmente quedó afectado en su salud, bienestar y felicidad. Rivera v. SLG Díaz, supra.
Teniendo presente dicha doctrina, dictaminamos que el T.P.I. concedió daños morales, por sufrimientos y angustias mentales, que no fueron adecuadamente establecidos por la prueba. La partida de $20,000 concedida por este concepto debe ser eliminada.
y
Por los fundamentos antes expuestos, se confirma la sentencia apelada, pero modificándola a los efectos de eliminar la partida de $20,000 concedida por concepto de sufrimientos y angustias mentales.
Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.
Mildred I. Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones
ESCOLIOS 2006 DTA 17
1. La presentación de la querella tuvo el efecto de interrumpir el término de un año para instar la causa de acción por discrimen, según establecido en el Artículo Núm. 1 de la Ley Núm. 100 de 30 de junio 1959, según ha sido enmendada, 29 L. P.R.A. see. 146.
2. La emisión de este informe por la U.A.D. reactivó el decurso del término de un año para instar la causa de acción por discrimen, 29 L.P.R.A. see. 146.
3. De los autos sometidos para nuestra consideración, se desprende que el Bufete Legal del licenciado Urgell Cuebas había sido contratado por el D.T.R.H. desde 1994 para desempeñarse como consultor en el área de relaciones y derechos del trabajo; y como .abogado en casos de derechos del trabajó que le fueran asignados. .
4. De los autos no surge que para esta fecha el Bufete del licenciado Urgell Cuebas hubiera informado al D.T.R.H. y a Aponte el curso que se seguiría en el caso de éste.
5. Para esta fecha, la causa de acción de Aponte por discrimen estaba prescrita desde el mes de septiembre de 1994.
6. Para cuando el licenciado Marcial sometió esta lista de casos al D.T.R.H., la causa de acción de Aponte por despido injustificado estaba prescrita desde febrero de 1995 y la de discrimen por edad había prescrito desde septiembre de 1994.
7. Uno de los documentos que obran en autos es una carta del 25 de mayo de 1994, dirigida a Aponte por la entonces Directora del Negociado de Asuntos Legales del D.T.R.H., Leda. Evelyn Cruz Gómez, donde le informaba que su caso había sido referido al licenciado Urgell Cuebas “para la evaluación y acción legal correspondiente”. Al pie de dicha comunicación se señaló que “[p]ara mayor información sobre el progreso de caso, puede usted comunicarse con el licenciado Urgell Cuebas, al teléfono 724-1717".
8. De las alegaciones de la demanda se desprende que la causa de acción planteada por Aponte está predicada en los Artículos 1802 y 1803 del Código Civil, 31 L.P.R.A. seccs. 5141 y 5142.
9. No surge de los autos que el E.L.A. haya interpuesto recurso apelativo alguno para revisar esta sentencia parcial.
10. El Artículo 2A de la Ley Núm. 100, 29 L.P.R.A. sec. 147a, establece que:

“Todo patrono u organización obrera o comité conjunto obrero-patronal que controle programas de aprendizaje, de entrenamiento o reentrenamiento, incluyendo programas de entrenamiento en el trabajo, que discrimine contra una persona por razón de su raza, color, sexo, matrimonio, origen o condición social, afiliación política, ideas políticas o religiosas, o sin justa causa por edad avanzada para ser admitido a, o empleado en, cualquier programa de aprendizaje u 
*778
otro entrenamiento:

(a) Incurrirá en responsabilidad civil:

(1) por una suma igual al doble del importe de los daños que el acto haya causado al empleado o solicitante de empleo;

(2) o por una suma no menor de cien dólares ($100) ni mayor de mil dólares ($1,000), a discreción del tribunal, si no se pudieren determinar daños pecuniarios;

(3) o el doble de la cantidad de los daños ocasionados si ésta fuere inferior a la suma de cien dólares ($100);...”